# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CATHERINE SELLERS,<br><br>             Plaintiff,<br><br>v.<br><br>MONROE COUNTY CORRECTIONAL FACILITY and MONROE COUNTY BOARD OF PRISON INSPECTORS.<br><br>             Defendants. | JURY TRIAL DEMANDED<br><br>Civ. No. _____ |

## COMPLAINT

Plaintiff, Catherine Sellers, by her counsel, Mobilio Wood, brings this action against Defendants, Monroe County Correctional Facility and Monroe County Board of Prison Inspectors. Plaintiff alleges upon knowledge as to herself and her own acts, and otherwise upon information and belief, as follows:

## PARTIES

1. Plaintiff Catherine Sellers ("Plaintiff") is an adult individual and citizen of the United States of America.

2. Defendant, Monroe County Correctional Facility ("MCCF"), is a county prison located at 4250 Manor Drive, Stroudsburg, PA 18360.

3. Defendant, Monroe County Board of Prison Inspectors ("Board"), is the governing county authority for MCCF and is located at 4250 Manor Drive, Stroudsburg, PA 18360.

4. At all times relevant and material herein, Defendants acted by and through its agents, servants, and employees, each of whom acted in the course and scope of their employment with and for the Company.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action in accordance with 28 U.S.C. § 1331 because this civil action arises under a law of the United States and seeks redress for violations of a federal law.

6. This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this Commonwealth and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice.

7. Venue is properly laid in this judicial district pursuant to 28 U.S.C. § 1391, as a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district, and Defendants are subject to personal jurisdiction in this district.

## Exhaustion of Administrative Remedies

8. On August 31, 2022, Ms. Sellers dual-filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and Pennsylvania Human Relations Commission ("PHRC") against Defendants, alleging that it unlawfully discriminated against her on the basis of race, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951 *et seq.* ("PHRA"); and on the basis of her disability, in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. 12101 et seq., and the Pennsylvania Human Relations Act, as amended, 43 P.S. 951 et seq.

9. The EEOC issued a Notice of Right to Sue to Ms. Sellers on May 2, 2023.

## FACTUAL ALLEGATIONS

10. Ms. Sellers is African-American.

11. On June 25, 2012, Ms. Sellers was hired as a Correctional Officer by Defendants.

12. On November 29, 2021, Ms. Sellers suffered a serious ankle injury, a left ankle lateral ligament tear, causing her to be unable to walk.

13. Ms. Sellers's injury substantially limited one or more of her major life activities, including walking and decreased range of motion of her lower extremity.

3

14. In addition or in the alternative, Defendants regarded Ms. Sellers as having an impairment due to her injury.

15. Ms. Sellers's injury therefore constitutes a "disability" as defined by 42 U.S.C. § 12102(2).

16. At all times relevant and material herein, Ms. Sellers was capable of performing the essential functions of her employment position with a reasonable accommodation, i.e. leave of absence.

17. On December 2, 2021, Ms. Sellers was granted and began using FMLA leave to recover from her ankle injury.

18. On April 15, 2022, Ms. Sellers received reconstructive surgery to repair her seriously injured ankle.

19. Ms. Sellers was advised by her physician that she could return to work in or around July of 2022.

20. Ms. Sellers immediately notified her Human Resources representative who advised her that her FMLA leave would be exhausted on June 2, 2022, and that any additional time off would have to be approved in accordance with the ADA.

21. On May 19, 2022, Ms. Sellers submitted an ADA request signed by her physician, which indicated an *approximate* return to work date of July 18, 2022. On or about May 26, 2022, the ADA request was approved.

22. On July 5, 2022, Ms. Sellers attended a follow up appointment with her physician who recommended Ms. Sellers undergo a full course of physical therapy which would add an additional two (2) weeks to Ms. Sellers's original ADA request.

23. Ms. Sellers advised her employer of the need for additional recovery time, and on July 11, 2022, Defendants advised Ms. Sellers to submit a second ADA request, which she did.

24. Unbeknownst to Ms. Sellers, the individual in charge of processing ADA requests for Defendants was out of town on vacation.

25. On July 19, 2022, Ms. Sellers submitted an ADA request that indicated Ms. Sellers's *specific* return to work date of August 8, 2022.

26. On July 19, 2022, Warden, Garry Haidle, sent a letter to Ms. Sellers stating that the second ADA request has a "TENTATIVE" end date of August 8, 2022, and that if Ms. Sellers did not return to work by July 21, 2022, she would be terminated.

27. It is unclear why Defendants believed that the return-to-work date of August 8, 2022, was "tentative" as the ADA request made clear that the return date of August 8, 2022, was "firm".

28.	Further, and in any event, an "approximate" as opposed to a "firm" return date would not have rendered Ms. Sellers's leave request unreasonable as a matter of law.

29.	Nonetheless, that same day, Ms. Sellers received an email from Defendants stating that the ADA request was denied because of "the lack of a firm return to work date on the doctor's note" and that "the paperwork we just received still indicates the same tentative end date, not a firm one".

30.	Since Ms. Sellers's could not return to work due to her restrictions, and because her ADA request was denied, Ms. Sellers was terminated.

31.	Other Caucasian employees were permitted to take extended leaves of absence, with or without the approval of an ADA request, without consequence.

## COUNT I

### VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990: DISCRIMINATION

32.	Plaintiff hereby incorporates the preceding paragraphs by reference as though fully set forth at length herein.

33.	At all times relevant and material herein, Plaintiff was an "employee" within the meaning of 42 U.S.C. § 12111(4).

34.	At all times relevant and material herein, Defendants employed fifteen (15) or more persons.

35. At all times relevant and material herein, Defendants were an "employer" within the meaning of 42 U.S.C. § 12111(5).

36. Plaintiff suffered from a left ankle lateral ligament tear.

37. Plaintiff's left ankle lateral ligament tear substantially limited one or more of her major life activities, including an inability to walk, and decreased range of motion of her lower extremity.

38. In addition or in the alternative, Defendant regarded Plaintiff as having an impairment due to her left ankle lateral ligament tear.

39. Plaintiff's left ankle lateral ligament tear therefore constitutes a "disability" as defined by 42 U.S.C. § 12102(2).

40. At all times relevant and material herein, Plaintiff was capable of performing the essential functions of her employment position with or without a reasonable accommodation.

41. 42 U.S.C. § 12112(a) provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

42. Defendants rejected Plaintiff's legitimate and legally sufficient ADA request due to Plaintiff's status as a disabled person, or a person perceived to be disabled.

43. Plaintiff was terminated due to Defendants' rejection of Plaintiff's legitimate and legally sufficient ADA request.

44. Defendants' stated reason for denying the request was false, as the ADA request return date was not "tentative" but "firm" and, in any case, a "tentative" return date is legally adequate.

45. Through their conduct, Defendants violated the ADA.

46. Defendants acted with reckless indifference to Plaintiff's rights under federal law, warranting an award of punitive damages.

47. As a result of Defendant's conduct, Plaintiff has suffered, and continues to suffer, emotional distress, humiliation, embarrassment, anguish, personal hardship, career and social disruption, psychological and emotional harm, and lost wages.

## COUNT II

**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990: FAILURE TO ACCOMMODATE**

48. Plaintiff hereby incorporates the preceding paragraphs by reference as though fully set forth at length herein.

49. At all times relevant and material herein, Plaintiff was an "employee" within the meaning of 42 U.S.C. § 12111(4).

50. At all times relevant and material herein, Defendants employed fifteen (15) or more persons.

51. At all times relevant and material herein, Defendants were "employers" within the meaning of 42 U.S.C. § 12111(5).

52. Plaintiff suffered from a left ankle lateral ligament tear.

53. Plaintiff's left ankle lateral ligament tear substantially limited one or more of her major life activities, including an inability to walk, and decreased range of motion of her lower extremity.

54. Plaintiff's left ankle lateral ligament tear therefore constitutes a "disability" as defined by 42 U.S.C. § 12102(2).

55. At all times relevant and material herein, Plaintiff was capable of performing the essential functions of his employment position with or without a reasonable accommodation.

56. 42 U.S.C. § 12112(b)(5)(A) provides that an employer violates the ADA by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the

accommodation would impose an undue hardship on the operation of the business of such covered entity[.]"

57. Defendants failed to accommodate Plaintiff's legitimate and legally sufficient ADA request for additional time off work.

58. Plaintiff was terminated due to Defendants' rejection of Plaintiff's legitimate and legally sufficient ADA request.

59. Defendants' stated reason for denying the request was prima facie discriminatory as the ADA request return date was not "tentative" but "firm" and, in any case, a "tentative" return date is legally adequate.

60. In addition to misrepresenting the ADA request terms, Defendants failed and refused to engage in the interactive process in good faith.

61. Plaintiff could have been accommodated with minimal burden to Defendants.

62. Defendants nonetheless refused to reasonably accommodate Plaintiff.

63. Through its conduct, Defendants violated the ADA.

64. Defendants acted with reckless indifference to Plaintiff's rights under federal law, warranting an award of punitive damages.

65. As a result of Defendants' conduct, Plaintiff has suffered, and continues to suffer, emotional distress, humiliation, embarrassment, anguish,

personal hardship, career and social disruption, psychological and emotional harm, and lost wages.

## COUNT III

### VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990: INTERFERENCE

66. Plaintiff hereby incorporates the preceding paragraphs by reference as though fully set forth at length herein.

67. 42 U.S.C. § 12203(b) renders it "unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed . . . any right granted or protected by this chapter."

68. Defendants failed to accommodate Plaintiff's legitimate and legally sufficient ADA request for additional time off work.

69. Plaintiff was terminated due to Defendants' rejection of Plaintiff's legitimate and legally sufficient ADA request.

70. Defendants' stated reason for denying the request was false as the ADA request return date was not "tentative" but "firm" and, in any case, a "tentative" return date is legally adequate.

71. In addition to misrepresenting the ADA request terms, Defendants failed and refused to engage in the interactive process in good faith.

11

72. Defendants knew or should have known that Plaintiff would have requested additional accommodations related to his disability if Defendant did not terminate his employment.

73. Through its conduct, Defendants violated the ADA.

74. As a result of Defendants' conduct, Plaintiff has been harmed.

## COUNT IV

### VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990: RETALIATION

75. Plaintiff hereby incorporates the preceding paragraphs by reference as though fully set forth at length herein.

76. At all times relevant and material herein, Plaintiff was an "employee" within the meaning of 42 U.S.C. § 12111(4).

77. At all times relevant and material herein, Defendants employed fifteen (15) or more persons.

78. At all times relevant and material herein, Defendants were "employers" within the meaning of 42 U.S.C. § 12111(5).

79. Plaintiff suffered from a left ankle lateral ligament tear.

80. Plaintiff's left ankle lateral ligament tear substantially limited one or more of her major life activities, including an inability to walk, and decreased range of motion of her lower extremity.

81. In addition or in the alternative, Defendants regarded Plaintiff as having an impairment due to her left ankle lateral ligament tear.

82. Plaintiff had a record of impairment in that Defendants were aware of the injury and limitations no later than December 2, 2021.

83. Plaintiff's left ankle lateral ligament tear therefore constitutes a "disability" as defined by 42 U.S.C. § 12102(2).

84. At all times relevant and material herein, Plaintiff was capable of performing the essential functions of her employment position with or without a reasonable accommodation.

85. 42 U.S.C. § 12203(a) states that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."

86. The Court of Appeals for the Third Circuit has held that making a good-faith request for an accommodation is protected activity for purposes of the ADA's anti-retaliation provision. Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 191 (3d Cir. 2003).

87. On July 19, 2022, Plaintiff made a good-faith request for an accommodation in the form of time off from work.

88. On August 2, 2022, Defendants terminated Plaintiff for allegedly providing a "tentative" return to work date on her ADA request, (which was false) and, in any case, a "tentative" return date is legally adequate.

89. Through its conduct, Defendant sviolated the ADA.

90. As a result of Defendant's conduct, Plaintiff has been harmed.

## COUNT V

**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964: RACE DISCRIMINATION**

91. Plaintiff hereby incorporates the preceding paragraphs by reference as though fully set forth at length herein.

92. Plaintiff was an "employee" as defined by 42 U.S.C. § 2000e(f).

93. Defendants were Plaintiff's "employer" within the meaning of 42 U.S.C. §2000e(b), and employed 15 or more persons.

94. Title VII provides that it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race. . ." 42 U.S.C. § 2000e-2(a)(1).

95. Plaintiff's race is black.

96. At all times relevant and material herein, Plaintiff was qualified for the position of Correctional Officer

97. Other Caucasian employees were permitted to take extended leaves of absence, with or without the approval of an ADA request, without consequence.

98. Yet, Plaintiff's request was unreasonably denied, and she was terminated.

99. Through its conduct, Defendant violated Title VII.

100. Defendants acted with reckless indifference to Plaintiff's rights under federal law, warranting an award of punitive damages.

101. As a result of Defendants' conduct, Plaintiff has suffered, and continues to suffer, emotional distress, humiliation, embarrassment, anguish, personal hardship, career and social disruption, psychological and emotional harm, and lost wages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that a judgment be entered in his favor and against Defendants in the following respects:

a) An order awarding damages on all counts herein, including punitive damages;

b) An order awarding attorneys' fees and expenses on all counts herein;

c) Pre-judgment interest; and

d) All other relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiff hereby demands a jury trial on all issues so triable.

                              Respectfully submitted,

                              **Mobilio Wood**

BY:   *s/ Matthew Mobilio*
        Matthew Mobilio, Esq. (I.D. No. 209439)
        4728 Hamilton Boulevard
        Allentown, PA 18104
        Phone: (610) 882-4000
        Fax: (866) 793-7665
        matt@mobiliowood.com