## THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CATHERINE SELLERS :
:
              Plaintiff, :    3:23-CV-1373
:    (JUDGE MARIANI)
       v. :
:
MONROE COUNTY CORRECTIONAL :
FACILITY, *et al.* :
:
            Defendants. :

### MEMORANDUM OPINION

Presently before the Court is a motion for summary judgment filed by Defendants

Monroe County Correctional Facility and Monroe County Board of Prison Inspectors

("Defendants"). (Doc. 21). For the reasons that follow, Defendants' motion will be granted.

### I.       INTRODUCTION & PROCEDURAL HISTORY

On June 20, 2023, Plaintiff Catherine Sellers ("Plaintiff") filed a Complaint against the

Defendants in the Eastern District of Pennsylvania. (Doc. 1). In the Complaint, Plaintiff

asserts five claims against the Defendants. (*Id.*). Plaintiff brings four claims under the

Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq* ("ADA") alleging disability

discrimination, failure to accommodate, interference, and retaliation. (*Id.*, at 6-14). Plaintiff

also brings a claim for racial discrimination under Title VII of the Civil Rights Act of 1964, 42

U.S.C. § 2000e *et seq.* ("Title VII"). (*Id.*, at 14-15). Soon thereafter, the late Honorable

Judge Edward Smith transferred this action to this Court pursuant to 28 U.S.C. § 1406(a).[1]

(Doc. 5).

On or about December 2, 2024, Defendants filed a motion for summary judgment, along with a statement of material facts, exhibits, and brief in support.  (Docs. 21, 21-1, 21-2, 23).  Plaintiff, who is represented by counsel, did not respond to Defendants' motion for summary judgment.  After the time to respond had expired, the Court issued a Show Cause Order on January 13, 2025.  The Show Cause Order stated:

> The background of this Order is as follows:
>
> On December 2, 2024, Defendants filed a Motion for Summary Judgment (Doc. 21) and accompanying statement of material facts (Doc. 21-1) and exhibits (Doc. 21-2). Defendant thereafter filed their brief in support of the motion for summary judgment on December 16, 2023 (Doc. 23).  As of the date of this Order, Plaintiff has failed to file a brief in opposition to Defendants' motion or otherwise respond to the motion.
>
> Pursuant to Middle District of Pennsylvania Local Rules, "[a] brief in opposition to a motion for summary judgment and LR 56.1 responsive statement, together with any transcripts, affidavits or other relevant documentation, shall be filed within twenty-one (21) days after service of the movant's brief."  M.D. Pa. L.R. 7.6.  "Any party who fails to comply with this rule shall be deemed not to oppose such motion."
>
> **ACCORDINGLY, THIS 13th DAY OF JANUARY, 2025 IT IS HEREBY ORDERED THAT** within **7 days of the date of this Order,** Plaintiff shall **SHOW CAUSE** why this Court should not deem Defendants' motion for summary judgment unopposed.

(Doc. 25).

In response to the Show Cause Order, Plaintiff submitted a memorandum of law and made no attempt to explain her failure to file a response to Defendants' motion or otherwise

---

[1]    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

respond to the Show Cause Order.  (Doc. 26).  Notably, Plaintiff did not and has not submitted any response to Defendants' Statement of Materials Facts. [2]  Nor has Plaintiff submitted any evidence in opposition to Defendants' motion.  Rather, Plaintiff merely relies on the allegations in the Complaint.  Therefore, in the only document submitted by Plaintiff in opposition to Defendants' motion for summary judgment, Plaintiff merely block quotes from two cases and does not cite to any record facts or evidence in opposition to Defendants' motion for summary judgment, (Doc. 26), but instead, Plaintiff relies only on the allegations in the Complaint.

## II.     STATEMENT OF UNDISPUTED MATERIAL FACTS

As discussed, Plaintiff did not file any response to DSOMF or file a timely brief in opposition to Defendants' motion.   Pursuant to Middle District of Pennsylvania Local Rules, "[a] brief in opposition to a motion for summary judgment and LR 56.1 responsive statement, together with any transcripts, affidavits or other relevant documentation, shall be filed within twenty-one (21) days after service of the movant's brief."  M.D. Pa. L.R. 7.6. "Any party who fails to comply with this rule shall be deemed not to oppose such motion." *Id.*  Thus, under the Local Rules, Plaintiff is deemed not to oppose Defendants' motion for summary judgment.  Although Plaintiff failed to respond to DSOMF, and therefore admitted each of DSOMF, the Court will nevertheless proceed to set forth the undisputed factual record:

---

[2]      The Court will refer to Defendants' Statement of Material Facts, (Doc. 21-1), as "DSOMF."

Plaintiff is African-American. (DSOMF, ¶ 1). On June 25, 2012, Plaintiff was hired as a Correction Officer by Defendants. (*Id.*, ¶ 2). On or about November 29, 2021, Plaintiff suffered an out-of-work injury when she injured her ankle falling off a beam at a trampoline park while playing with her brother and nephew. (*Id.*, ¶ 3). Monroe County has a Disability Leave of Absence policy which provides: "The maximum duration that a disability leave of absence can be approved is for six (6) months, which would include the maximum twelve (12) weeks under F.M.L.A. If compelling reasons require an extension, it will be reviewed by the County Commissioners to determine whether extension is warranted and whether it should be granted." (*Id.*, ¶ 4).

While employed by Monroe County, Plaintiff's employment was also governed by a Collective Bargaining Agreement with Teamsters Local 773 ("CBA"), which states: "The maximum leave of absence shall be for … six (6) months in the case of off-the-job illness or injury … provided that any such leaves may be extended beyond these limits if required as a reasonable accommodation under the Americans with Disabilities Act." (*Id.*, ¶ 5). In a medical note dated December 2, 2021, Plaintiff's treating physician, Dr. Hamad Saleemi, noted that "[Plaintiff] is out of work until 12/20/2021. She will be reassessed on or just prior to that date." (*Id.*, ¶ 6). Plaintiff interpreted Dr. Saleemi's December 2, 2021, note to mean that she would be out of work until December 20, 2021, but not that she would be returning to work on December 20, 2021. (*Id.*, ¶ 7). Plaintiff did not return to work on December 20, 2021. (*Id.*, ¶ 8).

In a medical note dated December 22, 2021, Plaintiff's treating physician, Dr. Patrick R. McDonald, noted that:  "Catherine will be out of work until 2/10/22.  She will be re-evaluated at her next appointment."  (*Id.*, ¶ 9).  Plaintiff interpreted Dr. McDonald's December 22, 2021, note to mean that she would be out of work until February 10, 2021, but not that she would be returning to work on that date.  (*Id.*, ¶ 10).  Plaintiff did not return to work on February 10, 2022.  (*Id.*, ¶ 11).

Plaintiff required surgery on her ankle in April 2022 shortly prior to her April 28, 2022, appointment.  (*Id.*, ¶ 12).  "On the medical note dated April 28, 2022, Dr. McDonald indicated of Plaintiff that 'She is expected to be out of work until 07/18/2022.'"  (*Id.*, ¶ 13). Plaintiff interpreted Dr. McDonald's April 28, 2022, note to mean that she would be returning to work on July 18, 2022.  (*Id.*, ¶ 14).  "When questioned why she interpreted Exh. 'D' to mean she was out of work until December 20, 2021 but not returning on that date, and why she interpreted Exh. 'E' to mean she was out of work until February 10, 2022 but not returning on that date, but she interpreted Exh. 'F' to mean she was actually returning on July 18, 2022, Plaintiff—after claiming to be confused—cryptically referenced her 'recovery time' from the surgery."  (*Id.*, ¶ 15).

Plaintiff's medical leaves of absence under Monroe County's Disability Leave of Absence policy, which included her allotted FMLA leave and her CBA leave, expired on June 2, 2022.  (*Id.*, ¶ 16).  Prior to the expiration of said medical leaves, Monroe County engaged in the interactive process with Plaintiff and, pursuant thereto, Plaintiff and her

treating physician completed a Reasonable Accommodation Medical Authorization Form dated May 12, 2022, through which Plaintiff sought an ADA accommodation in the form of additional medical leave until July 18, 2022. (*Id.*, ¶ 17). The Reasonable Accommodation Medical Authorization Form dated May 12, 2022, states in multiple places that Plaintiff "is out of work until approximately 07/18/2022." (*Id.*, ¶ 18). Monroe County considered and granted Plaintiff's request for a reasonable accommodation in the form of additional medical leave until July 18, 2022. (*Id.*, ¶ 19). Plaintiff did not return to work on July 18, 2022. (*Id.*, ¶ 20).

Plaintiff's treating physicians stated on December 2, 2021, December 22, 2021, April 28, 2022, and May 12, 2022, that Plaintiff was out of work until a date certain, and Plaintiff did not return to work on or after any of those days. (*Id.*, ¶ 21). On a medical note dated July 5, 2022, Dr. McDonald indicated of Plaintiff that: "Catherine is to remain out of work untik [sic] approx. 08/08/2022." (*Id.*, ¶ 22). As memorialized in a letter dated July 19, 2022, Monroe County Assistant Director of HR Theresa Ratliff informed Plaintiff that, on July 11, 2022, pursuant to the interactive process and in response to Plaintiff's medical note dated July 5, 2022, Plaintiff had been asked to complete a new Reasonable Accommodation Medical Authorization Form, but as of the date Ms. Ratliff drafted and sent the July 19, 2022, letter Plaintiff had failed to provide it. (*Id.*, ¶ 23). Ms. Ratliff further stated in the letter dated July 19, 2022, that:

> Based on an ADA request completed by you and your doctor, the County agreed to extend your leave as an accommodation under the [ADA] an additional 6 ½ weeks

6

(through 7/17/22) based on your doctor's assertion that you had a FIRM return to work date on July 18, 2022. You were not able to return to work on 7/18/22. You were not able to return to work on 7/18/22 as previously indicated and have submitted a second request for an extension with a TENTATIVE end date of 8/8/2022. On July 1 you were asked by Deborah Thompson to have your physician complete a new ADA request form, but to date we have not received one. Because this new end date on the doctor's note you submitted is tentative and exceeds the length of time the Commissioners have approved for extension of leave for other employees, we are denying your request. If you have not returned to work with a doctor's release by 7/21/22, your employment with Monroe County will be severed at the end of that day.

(*Id.*, ¶ 24).

The Monroe County Commissioners have never granted to any employee an ADA accommodation in the form of a medical leave of absence beyond the 6 ½ weeks granted to Plaintiff. (*Id.*, ¶ 25). Plaintiff submitted a Reasonable Accommodation Medical Authorization Form dated July 18, 2022, which states in multiple places that Plaintiff "will remain out of work until 8/8/2022." (*Id.*, ¶ 26). On page 3 of the Reasonable Accommodation Medical Authorization Form dated July 18, 2022, it states that Plaintiff "will remain out of work until 8/8/2022 and be re-evaluated as scheduled." (*Id.*, ¶ 27). Plaintiff expected Monroe County to accept that August 8, 2022, was a date certain for her return to work. (*Id.*, ¶ 28). When asked to explain why she believed the "approximately" August 8, 2022, date was a firm return to work date despite the same language being used on Exhibit D, E, F, and H, Plaintiff responded "because of my healing process." (*Id.*, ¶ 29). Plaintiff could not provide any details or specifics regarding what her "healing process" meant, or whether she had any discussions with her treating physicians regarding her "healing

process" and how, if at all, that meant August 8, 2022, was a firm return to work date. (*Id.*, ¶ 30).

While Plaintiff testified at her deposition that "approximately" August 8, 2022 equated to a date certain for her return to work, in her response to Defendants' Interrogatory No. 2, which she verified as true and correct on February 26, 2024, she stated that: "Plaintiff received medical clearance to return to work *approximately* August 8, 2022." (*Id.*, ¶ 31). Warden Haidle interpreted the Reasonable Accommodation Medical Authorization Form dated July 18, 2022, to mean that Plaintiff will be out of work until August 8, 2022, and would be reevaluated at that time, but not that she would return to work on August 8, 2022. (*Id.*, ¶ 32). Theresa Ratliff interpreted the Reasonable Accommodation Medical Authorization Form dated July 18, 2022, to mean that Plaintiff will be out of work until August 8, 2022, and would be evaluated at that time, but not that she would return to work on August 8, 2022. (*Id.*, ¶ 33).

Despite being requested by defense counsel during her deposition, and on October 28, 2024 and November 6, 2024, to provide any documentation from her treating physician showing that Plaintiff was medically cleared to return to work—on August 8, 2022 or any time thereafter—Plaintiff failed to produce any such evidence and instead referred only to the July 5, 2022 medical note, which states: "Catherine is to remain out of work untik [sic] approx. 08/08/2022." (*Id.*, ¶ 34). Because Plaintiff could not produce to Monroe County a firm return to work date, and because the new tentative end date of her extensive medical

leave of absence was August 8, 2022, which exceeded the length of time that Monroe County Commissioners had provided to any other County employee, the Commissioners determined that it was necessary to terminate the employment of Plaintiff effective July 21, 2022. (*Id.*, ¶ 35).

Following her termination, Plaintiff did not obtain other employment until March 2024—approximately twenty (20) months after her termination from Monroe County. (*Id.*, ¶ 36). Following her termination in July 2022, Plaintiff has never sought medical treatment for any alleged emotional or psychological harm. (*Id.*, ¶ 37). On one occasion (October 18, 2021), Plaintiff communicated a complaint to HR that Correction Officer Ogden had been disrespectful and nasty toward her and had not been providing her with the necessary shift change information, but she did not indicate in her complaint that race was an issue. (*Id.*, ¶ 38). Plaintiff never communicated any allegations of race discrimination to Warden Garry Haidle. (*Id.*, ¶ 39). Plaintiff cannot identify any Correction Officer at Monroe County Correctional Facility, including any Caucasian Correction Officer, who was granted an ADA accommodation in the form of more leave of absence time than her. (*Id.*, ¶ 40).

The union that represented the Monroe County Correction Officers (Teamsters Local 773), which was the bargaining unit of which Plaintiff was a member, would routinely file grievances in situations where they believed one or their unit members was treated unfairly. (*Id.*, ¶ 41). Around the time that Plaintiff received a letter from Theresa Ratliff dated July 19, 2022, seeking from her a definite return to work date, Plaintiff contacted her union

9

representative, Matt Weidman, but the union did not file a grievance on Plaintiff's behalf at

that time or at any time after her termination.  (*Id.*, ¶ 42).

### III.    STANDARD OF REVIEW

Summary judgment "is appropriate only where there is no genuine issue of material

fact and the moving party is entitled to judgment as a matter of law." *Gonzalez v. AMR*, 549

F.3d 219, 223 (3d Cir. 2008).  "An issue is genuine only if there is a sufficient evidentiary

basis on which a reasonable jury could find for the non-moving party, and a factual dispute

is material only if it might affect the outcome of the suit under governing law."  *Kaucher v.*

*Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).  Thus, through summary

adjudication, the court may dispose of those claims that do not present a "genuine dispute

as to any material fact."  Fed. R. Civ. P. 56(a).

The party moving for summary judgment bears the burden of showing the absence

of a genuine issue as to any material fact.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106

S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  Once such a showing has been made, the non-

moving party must offer specific facts contradicting those averred by the movant to establish

a genuine dispute of material fact.  *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110

S.Ct. 3177, 111 L.Ed.2d 695 (1990).  Therefore, the non-moving party may not oppose

summary judgment simply on the basis of the pleadings, or on conclusory statements that a

factual issue exists.  *Anderson*, 477 U.S. at 248.  "A party asserting that a fact cannot be or

is genuinely disputed must support the assertion by citing to particular parts of materials in

the record . . . or showing that the materials cited do not establish the absence or presence

of a genuine dispute, or that an adverse party cannot produce admissible evidence to

support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment

should be granted, "[t]he court need consider only the cited materials, but it may consider

other materials in the record." Fed. R. Civ. P. 56(c)(3). "Inferences should be drawn in the

light most favorable to the non-moving party, and where the non-moving party's evidence

contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW,*

*Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied* 507 U.S. 912,

113 S.Ct. 1262, 122 L.Ed.2d 659 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party

only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127

S.Ct. 1769, 167 L.Ed.2d 686 (2007). If a party has carried its burden under the summary

judgment rule,

> its opponent must do more than simply show that there is some metaphysical
> doubt as to the material facts. Where the record taken as a whole could not
> lead a rational trier of fact to find for the nonmoving party, there is no genuine
> issue for trial. The mere existence of some alleged factual dispute between the
> parties will not defeat an otherwise properly supported motion for summary
> judgment; the requirement is that there be no *genuine* issue of *material* fact.
> When opposing parties tell two different stories, one of which is blatantly
> contradicted by the record, so that no reasonable jury could believe it, a court
> should not adopt that version of the facts for purposes of ruling on a motion for
> summary judgment.

*Id.* (internal quotations, citations, and alterations omitted). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of evidence." *Anderson*, 477 U.S. at 255. Therefore, when evidentiary facts are in dispute, when the credibility of witnesses may be in issue, or when conflicting evidence must be weighed, a full trial is usually necessary.

## IV.     ANALYSIS

Defendants seek summary judgment dismissing Plaintiff's ADA claims and Title VII claim. (Doc. 21). As discussed, Plaintiff has failed to file a response to Defendants' motion and did not and has not filed any response to DSOMF, despite the Court bringing this matter to Plaintiff's attention by way of a Show Cause Order. (Doc. 25). Moreover, Plaintiff does not cite to a single document, with the exception for the Complaint, in her untimely opposition brief/reply to the Show Cause Order. (Doc. 26). This conduct violated Local Rules 7.6 and 56.1.

### A.  Plaintiff Failed to Comply with Local Rules 7.6 and 56.1

It is well-settled that a failure to a file any response to a Defendants' statement of material facts deems those facts admitted, and the Third Circuit routinely upholds grants of summary judgment on this basis. *See, e.g., Romero v. Twp. of Tobyhanna*, 2023 WL 2728829, *2 (3d Cir. Mar. 31, 2023) ("Here, the District Court was well within its discretion in striking Romero's untimely responses to the defendants' statement of material facts. The responses failed to include required reference to the record. Also, Romero failed to file a

brief in opposition to the defendants' motions, as explicitly directed by both by Local Rule 7.6 and the court's own order."); *Gomez v. Cullen*, 2022 WL 1183713, at *3 (3d Cir. Apr. 21, 2022) ("We have noted in the past that it is within the district court's purview to mete out appropriate penalties when a party has not complied with a local rule.") (citing *Weitzner v. Sanofi Pasteur, Inc.*, 909 F.3d 604, 613-14 (3d Cir. 2018)); *Rau v. Allstate Fire & Cas. Ins. Co.*, 793 Fed. App'x 84, 87 (3d Cir. 2019) ("Because a failure to object to a statement of facts is an admission under Local Rule 56.1, and the District Court has authority to impose sanctions for noncompliance with the local rules, we find no abuse of discretion in the decision to deem certain paragraphs of Allstate's SUF admitted."); *see also Manson v. Vogt*, 2024 WL 4529562, at *1 n.1 (M.D. Pa. Oct. 18, 2024) (granting motion for summary judgment, noting that "motion is deemed unopposed" under the Local Rule 7.6).

"Under Local Rule 56.1, a party must file a separate statement of material facts along with any motion for summary judgment." *Weitzner*, 909 F.3d at 613. "A party opposing summary judgment must file a corresponding answer to the statement of material facts, responding to the moving party's filing." *Id.* "Where an opposing party fails to object in its answer, those facts in the moving party's statement are considered admitted." *Id.* "Local Rule 56.1 was promulgated to bring greater efficiency to the work of the judges of the Middle District." *Id.* However, a district court is "still required to conduct a full analysis to determine whether granting summary judgment was appropriate." *Id.* at 614. The Court has reviewed the entire factual record and concludes that Plaintiff has failed to raise a

genuine dispute of material fact as to any of her claims, and therefore, Defendants are entitled to summary judgment on all claims. Accordingly, the Court will grant Defendants' motion for summary judgment in its entirety as more fully discussed below.

### B. **Plaintiff's ADA Claims Fail at Summary Judgment.**

Plaintiff brings four separate claims under the ADA: disability discrimination (Count I), failure to accommodate (Count II), interference (Count III), and retaliation (Count IV). Defendants move for summary judgment on all of Plaintiff's ADA claims. As to the ADA claim alleging discrimination in Count I, Defendants seek summary judgment, arguing that there is no evidence that Plaintiff was a qualified individual with a disability who could perform the essential functions of her job with or without reasonable accommodation. (Doc. 23, at 17-22). Alternatively, Defendants claim that even if Plaintiff offered evidence that she was qualified, her claim nevertheless fails because Defendants have proffered a legitimate, nondiscriminatory reason for terminating Plaintiff's employment and Plaintiff cannot show pretext. (*Id.*, at 22-24). In Count II and III Plaintiff brings claims under the ADA for failure to provide a reasonable accommodation (Count II) and ADA interference (Count III). Defendants seek summary judgment, claiming they engaged in the interactive process with Plaintiff in good faith and provided her with a reasonable accommodation. (Doc. 23, at 24-27). In Count IV, Plaintiff brings a claim under the ADA for retaliation. Defendants seek summary judgment on Count IV, noting that there is no evidence that Defendants retaliated

against Plaintiff due to any alleged disability. (Doc. 23, at 27-28). The Court agrees with Defendants and will grant summary judgment on each of the four ADA claims.

"The ADA prohibits discrimination against qualified individuals who suffer a disability." *Emory v. AstraZeneca Pharm., L.P.*, 401 F.3d 174, 179 (3d Cir. 2005). "To prove disability discrimination, plaintiffs must demonstrate: (i) they have a disability within the meaning of the ADA; (ii) they are otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation by the employer; and (iii) they have suffered an otherwise adverse employment decision as a result of discrimination." *Morgan v. Allison Crane & Rigging, LLC*, 114 F.4th 214, 220-21 (3d Cir. 2024) (internal citation and quotation marks omitted).

"A qualified individual with a disability is defined as person 'with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.'" *Conneen v. MBNA Am. Bank, N.A.*, 334 F.3d 318, 326 (3d Cir. 2003) (citations omitted). "In order to establish that a plaintiff is 'qualified' under the ADA, the employee must show that he/she 'satisfies the requisite skill, experience, education and other job-related requirements of the employment position that such individual holds or desires.'" *Id.* (quoting *Skerski v. Time Warner Cable Co.*, 257 F.3d 273, 278 (3d Cir. 2001)). "If the plaintiff is able to make that showing, he/she must then establish that with or without reasonable accommodation, he/she can perform the essential functions of the position held or sought." *Id.*

Here, Plaintiff's claim alleging disability discrimination under the ADA fails for at least two separate reasons. First, there is no evidence before the Court that Plaintiff was a qualified individual with a disability who could perform the essential functions of her job with or without reasonable accommodation. *See Fowler v. AT & T, Inc.*, 19 F.4th 292, 303 (3d Cir. 2021) (to maintain a disability discrimination claim, the plaintiff "must show that she was qualified for her position. . . The ADA claim further requires [plaintiff] to show that, with or without reasonable accommodation, she can perform the essential functions of that position.") (internal citation and quotation marks omitted). Indeed, Plaintiff offers no facts or evidence to support her ADA claims, and further failed to raise a genuine dispute of material fact in opposition to the evidence offered by Defendants on summary judgment. Rather, Plaintiff relies only on the allegations in the Complaint. It is Plaintiff's burden to prove her claims, and, as the non-moving party at the summary judgment stage, she must identify and raise a genuine dispute as to any material fact. Plaintiff failed to do so.

In addition, even assuming *arguendo* that Plaintiff was a qualified individual with a disability, there is no genuine dispute of material fact as to whether Defendants have proffered a legitimate, nondiscriminatory reason for terminating Plaintiff's employment and Plaintiff has not and cannot show pretext. Defendants have offered legitimate nondiscriminatory reasons for Plaintiff's termination—namely, Plaintiff's failure to provide her employer with a firm return to work date, presented a request for an indefinite or open-ended leave, her new tentative return date exceeded the length of time the Monroe County

Commissioners had provided to any other County employee under its policy, and was not a reasonable accommodation request under the ADA as a matter of law. (DSOMF, ¶¶ 34-35). Plaintiff offers nothing in response and does not claim or show a dispute of material fact that Defendants' reasons for her termination were a pretext for disability discrimination. Thus, the Court will grant Defendants' motion for summary judgment on Count I. *See Moore v. CVS Rx Servs., Inc.*, 142 F. Supp. 3d 321, 344 (M.D. Pa. 2015) ("The Court holds that there is no genuine dispute of material fact that Plaintiff failed to adequately establish the elements of her *prima facie* case. Equally relevant, the Court also holds that Defendant has proffered a legitimate, nondiscriminatory justification, which Plaintiff has failed to show was merely pretextual.").

In Count II, Plaintiff alleges a failure-to-accommodate claim under the ADA. "A plaintiff bringing an ADA failure-to-accommodate claim must establish: '(1) he was disabled and his employer knew it; (2) he requested an accommodation or assistance; (3) his employer did not make an a good faith effort to assist; and (4) he could have been reasonably accommodated.'" *Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 156 (3d Cir. 2017) (quoting *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 246 (3d Cir. 2006)). "Reasonable accommodations are modifications or adjustments to the work environment, or the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position." *Walton v. Mental Health Assoc. of Southeastern*

*Pennsylvania*, 168 F.3d 661, 741 (3d Cir. 1999) (internal citation and quotation marks omitted).

Here, there is no evidence from which a reasonable jury could infer that Defendants failed to make a good faith effort in meeting Plaintiff's request for accommodation in the form of additional leave. *See Conneen*, 334 F.3d at 333 ("both the employer and the employee have a duty to act in good faith once the interactive process begins.").[3] "All the interactive process requires is that employers make a good faith effort to seek accommodation." *Id.* (internal citation and quotation marks omitted).

It is undisputed that Defendants did in fact accommodate Plaintiff on several occasions. (DSOMF, ¶¶ 4-5, 16-17, 19, 23- 24). Moreover, the fact that Defendants did not accommodate Plaintiff in the form of additional leave after she had exhausted the leave she had been granted, does not mean Defendants failed to accommodate Plaintiff, especially where, as here, the undisputed material record shows that the leave requested by Plaintiff "exceeded the length of time that Monroe County Commissioners had provided to any other County employee" and presented a request for an indefinite and open-ended leave. (DSOMF, ¶¶ 25, 35); *see also Walton v. Mental Health Assoc. of Southeastern*

---

[3]     "The ADA itself does not refer to an interactive process." *Conneen*, 334 F.3d at 329 (internal citation and quotation marks omitted). "Rather, the text of the ADA requires only that employer make a reasonable accommodation to the known physical or mental disability of a qualified person with a disability unless the employer can show that the accommodation would impose an undue hardship on the employer." *Id.* "However, applicable regulations provide that in order to determine the appropriate reasonable accommodations it may be necessary for the employer to initiate an informal, interactive process with the employee in need of accommodation. This process should identify the precise limitations resulting from the disability and the potential reasonable accommodations that could over those limitations." *Id.*

*Pennsylvania*, 168 F.3d 661, 671 (3d Cir. 1999) ("Although unpaid leave supplementing regular sick and personal days might, under other facts, represent a reasonable accommodation, an employer does not have to allow leave of this type to the extent that [defendant] had already granted it to Walton. A blanket requirement that an employer allow such leave is beyond the scope of the ADA when the absent employee simply will not be performing the essential functions of her position."); *Brangman v. AstraZeneca, L.P.*, 952 F. Supp. 2d 710, 723 (E.D. Pa. 2013) ("The ADA does not require employers to grant indefinite or open ended disability leave.").

The Defendants also met the county's policies and complied with Plaintiff's CBA. [4] Plaintiff's accommodation requests were granted, until they were properly denied. Moreover, as stated by Plaintiff in opposition to Defendants' motion for summary judgment/reply to the Order to Show Cause, "[o]n summary judgment, a plaintiff need only identify an accommodation that on its face does not cost more than its benefits." (Doc. 26, at 4). Yet Plaintiff failed to identify any accommodation, let alone one that "on its face does not cost more than its benefits." (*Id.*). Moreover, the Third Circuit has held that similar accommodation requests, in the form of "continued leave," "would have created an undue

---

[4]     Monroe County has a Disability Leave of Absence policy which provides: "The maximum duration that a disability leave of absence can be approved is for six (6) months, which would include the maximum twelve (12) weeks under F.M.L.A. If compelling reasons require an extension, it will be reviewed by the County Commissioners to determine whether extension is warranted and whether it should be granted." (DSOMF, ¶ 4). Similarly, Plaintiff's employment was also governed by a CBA with Teamsters Local 773, which states: "The maximum leave of absence shall be for ... six (6) months in the case of off-the-job illness or injury ... provided that any such leaves may be extended beyond these limits if required as a reasonable accommodation under the Americans with Disabilities Act." (*Id.*, ¶ 5)

burden on the" employer. *Walton*, 168 F.3d at 671. And Plaintiff argues nothing to the contrary. Viewing all the facts and the inferences from those facts in the light most favorable to Plaintiff, no reasonable jury could find for Plaintiff on Count II alleging failure-to-accommodate under the ADA. *See Capps*, 847 F.3d at 157 ("Thus, Mondelez provided and Capps received the accommodation he asked for. There is clearly a lack of evidence to show that Mondelez did not make a good faith effort in accommodating Capps' request. . . . Since the record here does not support any failure to accommodate Capps, we affirm the District Court's grant of summary judgment on Capps' failure-to-accommodate claim under the ADA.").

Similarly, Count III alleging interference under the ADA also fails for many of the same reasons why Counts I and II fail. That is, there are no facts or evidence before the Court from which a reasonable jury could infer that Defendants interfered with any of Plaintiff's rights under the ADA. "Section 503 of the ADA makes it 'unlawful to . . . interfere with any individual in the exercise or enjoyment of' rights under the ADA." *Piotrowski v. Signature Collison Ctrs., LLC*, 2021 WL 4709721, at *2 (E.D. Pa. Oct. 8, 2011) (citing 42 U.S.C. § 12203(b)). Plaintiff fails to identify any facts to support her ADA interference claim alleged in Count III. To the contrary, the only evidence before the Court demonstrates that Defendants made a good faith effort to accommodate Plaintiff's disabilities, did in fact accommodate Plaintiff's disability, engaged in the ADA interactive process in good faith, and did not interfere with any of Plaintiff's rights under the ADA. (DSOMF, ¶¶ 15-19, 23-30).

And Plaintiff does not argue otherwise.  Thus, Defendants' motion for summary judgment as to Count II and III will be granted because there is no genuine dispute of material fact and Defendants are entitled to judgment as a matter of law.  *See Moore*, 142 F. Supp. 3d 321 (M.D. Pa. 2015) (granting summary judgment to defendant on plaintiff's ADA failure to accommodate claim, ADA failure to engage in interactive process claim, ADA retaliation claim, and concluding that plaintiff failed to demonstrate that employer's reason for terminating her was pretextual).

Next, Defendants seek summary judgment on Count IV, where Plaintiff alleges retaliation in violation of the ADA.  "To establish a claim for unlawful retaliation pursuant to the ADA, 'a plaintiff must show (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action.'" *Allen v. Lackawanna Cnty. Bd. of Commissioners*, 2022 WL 1110323, at *6 (M.D. Pa. Apr. 13, 2022) (quoting *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997)). Because Plaintiff does not offer any direct evidence of discrimination or retaliation, Plaintiff's ADA retaliation claim is "controlled by the three-step burden shifting framework established in *McDonnell Douglas*."  *Canada v. Samuel Grossi & Sons, Inc.*, 49 F.4th 340, (3d Cir. 2022).

Even assuming, *arguendo*, that Plaintiff has made a *prima facie* case of ADA retaliation (a doubtful proposition given the evidentiary record before the Court), her claim

nevertheless fails because there is no evidence that Defendants' legitimate

nondiscriminatory reasons for terminating Plaintiff's employment—based on her failure to

report to work after several extensions to do, were a pretext for disability discrimination.

Stated differently, there is simply no evidence that the decision to terminate Plaintiff was

casually connected, and in retaliation for, her exercise of any rights under the ADA.  *See*

*Allen v. Lackawanna Cnty. Bd. of Commissioners*, 2022 WL 1110323 (granting defendant's

motion for summary judgment on plaintiff's claim alleging retaliation under the ADA).

Viewing the facts and the inferences from those facts in the light most favorable to Plaintiff,

there is no genuine dispute of material fact as to whether Defendants discriminated, failed to

accommodate, interfered with, or retaliated against Plaintiff due to her disability or because

of her exercise of her rights under the ADA.  To the contrary, Plaintiff's request for indefinite,

open-ended leave, does not state a claim under the ADA as a matter of law.  *See Walton*,

168 F.3d at 671.  Put simply, there are no facts from which a reasonable jury could find that

Defendants discriminated against Plaintiff or engaged in any impermissible conduct under

the ADA.  Summary judgment will be granted to Defendants and Counts I, II, III, and IV will

be dismissed.

### C. Plaintiff's Title VII Claim Fails

Plaintiff also brings a clam for racial discrimination under Title VII.   "A Title VII

plaintiff may state a claim for discrimination under either the pretext theory set forth in

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 688 (1973), or

the mixed motive theory set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct.

1775, 104 L.Ed.2d 268 (1989), under which a plaintiff may show that an employment

decision was made based on both legitimate and illegitimate reasons." *Makky v. Chertoff*,

541 F.3d 205, 213 (3d Cir. 2008).

To establish her racial discrimination claims under the pretext theory, Plaintiff must

show that "(1) s/he is a member of a protected class; (2) s/he was qualified for the position

s/he sought to attain or retain; (3) s/he suffered an adverse employment action; and (4) the

action occurred under circumstances that could give rise to an inference of intentional

discrimination." *Makky*, 541 F.3d at 214 (citations omitted). "If a plaintiff establishes a

prima facie case of discrimination, then an inference of discriminatory motive arises and the

burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the

adverse employment action." *Id.* "If the defendant does so, the inference of discrimination

drops and the burden shifts back to the plaintiff to show that the defendant's proffered

reason is merely pretext for intentional discrimination." *Id.*

According to Defendants, even assuming *arguendo* that Plaintiff has satisfied the

first three elements of her claim, the claim nevertheless fails because Plaintiff fails at the

fourth element—i.e., her termination arose under circumstances that could give rise to an

inference of intentional discrimination. (Doc. 3 at 28-32). More specifically, Defendants

claim summary judgment is warranted because Plaintiff failed to identify a Caucasian

comparator who was treated more favorably than her, and that there is no evidence that the

decision to terminate Plaintiff's employment was based on race. (*Id.*). Plaintiff does not respond to Defendants' arguments seeking summary judgment or direct the Court to any facts or evidence supporting her claim. Because Plaintiff did not respond to DSOMF in support of its motion for summary judgment, Plaintiff has conceded those facts, and they are deemed admitted under Local Rule 56.1.

Viewing all the facts and the inference from those facts in the light most favorable to Plaintiff, as the non-moving party, there is no genuine dispute of material fact as to whether race played a role in Defendants' termination of Plaintiff's employment. The undisputed material factual record shows that race played no role in the termination of the Plaintiff. (DSOMF ¶¶ 39-40).[5] And Plaintiff offers neither evidence nor augments to the contrary.

Because Plaintiff failed to make out a *prima facie* case of race discrimination, the burden never shifted to Defendants to articulate a legitimate nondiscriminatory reason for Plaintiff's termination. Even if the burden shifted, however, Defendants have offered a legitimate nondiscriminatory reason for Plaintiff's termination—namely, Plaintiff's failure to provide her employer with a firm return to work date, presented a request for indefinite and open-ended leave, and because her new tentative return date exceeded the length of time

---

[5]      "The *McDonnell Douglas* burden-shifting framework does not apply in a mixed-motive case in the way it does in a pretext case because the issue in a mixed-motive case is not whether discrimination played the dispositive role but merely whether it played 'a motivating part' in an employment decision." *Makky*, 541 F.3d at 214. Plaintiff does not purport to set forth a cause of action for mixed-motive racial discrimination. And, in any event, such claim would similarly fail because there is no evidence before the Court that race played any role in Plaintiff's termination. Moreover, although the discrimination charge appears to have been filed with both the EEOC and the PHRC, (Doc. 1, ¶ 8), Plaintiff does not purport to bring any state law claims under the PHRA.

the Monroe County Commissioners had provided to any other County employee under its leave policy. (DSOMF, ¶¶ 34-35). Plaintiff does not offer a scintilla of evidence raising the inference that her employer's legitimate nondiscriminatory reason for her termination was merely a pretext for racial discrimination. *See Vaughn v. Boeing Co.*, 733 Fed. App'x 617, 624 (3d Cir. 2018) ("Because Vaughn has not provided reason to disbelieve Boeing or find racially discriminatory animus in his termination, he has failed to meet his burden to show pretext under *McDonnell Douglas*."). Accordingly, Defendants' motion for summary judgment on Count V will be granted.

## V.    CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment will be granted in its entirety. A separate Order follows.

Robert D. Mariani
United States District Judge